The first case being American Home Assurance Company v. Harry Tippie. We have Mr. Thomas Crosby for the appellant and Mr. Ray Rittenhouse for the appellee. Mr. Crosby, you may begin when you're prepared to. Your Honor. Counsel. My name is Tom Crosby, appearing for Harry Tippie. This is a case where I believe that Judge Ickes overstepped his bounds in terms of interpreting or refusing to interpret insurance policy. He basically, as you can see from his order, which says notwithstanding the specific, irrespective of the specific terms of the policy, there would be a set-off of $20,000 because the defendant, Mr. Tippie, had received more than $20,000 in workers' compensation coverage. Obviously, the first issue is whether or not you have to read the insurance policy and the terms and provisions of the insurance policy, and clearly you do. From reading the brief, you know that American Home is relying in support of Judge Ickes' determination on public policy arguments that the purpose of uninsured and underinsured motorist coverage is to put the insured in the same position he would have been had the tortfeasor carried the minimum amount of insurance. We never get to that issue. We look at the specific language of the policy, and I think that when you do, you'll see that there is no set-off provision here. This case involves some policy language that is different, expressly different, than the other set-off provisions that have been analyzed by the Supreme Court. Specifically, the case that I'd like to direct the Court's attention to, as I did in the brief, is the Gillen versus State form, where the Supreme Court said you don't get to the public policy issue in terms of what is the purpose of uninsured motorist coverage if the express language of the policy doesn't lead you there. We are not claiming, as they did in Stryker and Ullman and Sulzer, that the provisions of the policy are void as against public policy. We're saying that the provisions of the policy don't allow for a set-off. And the specific language that we're talking about in the policy that everyone is looking at comes under Section D, the limit of insurance, which in this particular case, the policy provides that they will not pay any amount where workers' compensation pays or potentially could pay for the same element of damage. So excluded from uninsured coverage here are any elements that will be paid for under workers' compensation. It isn't a set-off. If you look at the languages we've cited from the Supreme Court cases which deal with set-offs, they specifically say that the coverage shall be reduced by all amounts payable on account of workers' compensation. That's not what it says here. It says that the language is, we will not pay for any elements of loss that can be received under workers' compensation. So it isn't a situation where they're saying, we will set off from the amount we owe you of what you receive in workers' compensation. That simply isn't the case. But that's what the judge did. The judge said, well, you received elements of loss for workers' compensation for medical and for TTD in excess of $20,000. Therefore, we're going to set off those amounts against the gross $20,000 of uninsured, and you have no coverage. But the very policy says, the American Home Policy says, we will not pay uninsured for any elements of loss being paid for compensation. Fine. We say, don't pay us for those. We accept the fact that the policy says we don't get paid for those under your uninsured provision. Pay us for those elements of loss that aren't covered by workers' compensation. Now, there is nowhere in the policy, and counsel will be able to cite to no language, and that's where I utilize in public policy arguments, where it says that American Home is entitled to a set-off for amounts it's not obligated to pay, for elements it's not obligated to pay, against the elements that it is. I think that Judge Yikes' finding was specific here, and it really isn't disputed by either party, that the defendant has not received any compensation for pain and suffering or loss of normal life, both of which would be recoverable elements of loss in an uninsured motorist coverage. So, the elements that we are seeking recovery for have not been paid by workers' compensation. So, why does American Home claim that it's allowed to set off the amounts for elements that it has specifically said they are not going to pay without any clear set-off language? In all of the other cases, you know, Holman, Stryker, that the Supreme Court looked at the public policy issues and whether or not there was some ambiguity, the set-off language was, we will reduce your recovery by. So, I mean, set-off language has to be clear and definite and specific, and obviously, American Home could have drafted a similar provision, that we have a set-off policy, a set-off provision. They don't even have a set-off provision. They just say, if there is a duplicative element in workers' comp, we're not going to pay for it. It doesn't matter how much we received in workers' compensation. If workers' compensation provides for medical expenses, whether you get them or not, we won't pay. If workers' compensation provides for loss of earnings and you're covered by workers' comp, whether you get a dollar or $100,000, we're not paying you for that element. That's what their policy says. I mean, there's no ambiguity here. So, what American Home wants to say is, well, I guess Judge Ickes was right, and, you know, his interpretation squares with public policy. But as Gilton says, you don't even get to public policy without looking at the language of the insurance contract and seeing whether there's some ambiguity, or one of the parties is claiming that because of the ambiguity, the policy as enforced would be volatile of public policy. We aren't making that argument. Under workman's comp, you can be awarded a percentage of a man as a whole or be given a total permanent disability. How does that relate to the tort law? How does that fit over into the tort law? Medical and lost wages, we can see. How does that concept relate? Well, I think, Judge Donovan, under workers' compensation, Section 8A or 8E, you get entitled to specific loss or 8E1 or 8E2, wage differential or permanent total. Those go to loss of earnings, loss of future earnings. And we've cited, though, not in the brief but in attached to the appendix, Judge Ickes here raised this issue sous spante. This isn't something an American general came up with. He just said, well, you've got $20,000, so you don't have any insurance. This whole thing's moot. And then we asked to respond. And in the appendix, I deal with the issue of whether or not the IPI elements of damage are the same as what you get under Section 8 of the Act. So there is some overlap there, but we're not seeking that. And the cases that we cite in that appendix clearly show, because the court found that loss of normal life and pain and suffering are not covered by workers' comp, we didn't address it here, but there are cases here dealing with divorces, whether or not it's income or not for purposes of child support, that set out the distinction between the civil elements and the comp elements. But the bottom line here is there's no set-off provision. And if you look at the language of the statute, which obviously is going to have to be construed as an ordinary insurance policy reader would read it, it doesn't say you're uninsurably reduced by the amount you receive in workers' compensation. It says we won't pay any elements of loss that you get in workers' comp. So we say, fine, don't pay us for any of those. Pay us for pain and suffering and loss of normal life. They say, wait, wait, wait, but we're going to set off the amount that you got for these elements that we don't have to pay you. Where does that provision appear in the policy? It doesn't. So what do they rely on in public policy? You'd be no worse off. Well, the Supreme Court says we never get there. And that's why I think that Judge Eekes sort of overstepped his bounds by saying we could ignore the language of the policy. And under public policy grounds, fine, at any time you get more than $20,000 in workers' comp and you have $20,000 uninsured, you have no coverage. Underinsured motorist coverage in this policy is controlled by arbitration? Yeah, this is uninsured. Uninsured, I'm sorry. Yeah, and what we had going on here, Justice Donovan, is a DJ action by American Homes saying we can't proceed with the uninsured motorist arbitration until the workers' comp's over. And our initial response was, why? You don't pay any of the elements that workers' comp puts up so we can go ahead with the arbitration. And based on his ruling, Judge Eekes says, well, the whole thing's moved. In the arbitration, does the arbitrator or arbitrators provide you with an itemized disposition to where they're going to break it down into these categories rather than a general award? It can be either way. It depends on the arbitration. The policy doesn't provide either way and you believe the general rules of arbitration would allow you, in effect, an itemized? Right, and going into the arbitration in light of these policy provisions, we'd have to tell the arbitrators we can't get any of the same elements for workers' comp. You know, because that's what the policy provides. But quite simply here, read the policy on its face and you'll see that there is no set-off provision. There is no language that says uninsured will be reduced by amounts you receive from workers' compensation or similar law. There's simply a clause that says if you can get these elements in workers' compensation, uninsured motors' coverage doesn't apply and we won't pay for those elements at all. That's another reason why we didn't have to wait for the arbitration. Because it's a categorical denial of coverage for any element that's covered by workers' comp, regardless if you get a dollar or $100,000 for that element. They're not going to address it in their policy. And that's just the plain reading of the policy. And if you look at American Homes brief, they talk about baking cakes that, you know, in their policy say we will pay for all damages that you sustain during personal injury. If they say all damages, that means all elements. But they want to ignore that portion of their policy which says that for uninsured, we won't pay for those elements that you can get recovery for through coverage. There simply is no set-off provision. If they wanted one, they could have drafted one. So I think that because this is in front of the court as a matter of – there are no material questions of fact and you're looking at a de novo as an issue of law, that the relief we would like is for you to reverse and allow us to go forward with our arbitration of the uninsured motorist coverage. Thank you. Thank you, Mr. Crosby. You'll have the opportunity to rebut. Mr. Rittenhouse? Please report. I'd like to begin my remarks by noting that, and I think counsel is correct, when he stated that there's no ambiguity here in the policy. So in reference to the Gillen case versus State Farm regarding whether you get to the public policy issue first or after reviewing the terms of the policy, the important aspect in Gillen was that the court found an ambiguity. It had to do with the provision in the policy that dealt with other similar laws, and it was a pension plan that had paid the widow a certain sum, and State Farm wanted to apply that amount to its uninsured motorist provision. And the court said, well, other similar law is too ambiguous, and therefore you're not allowed to use that settle. But in this instance, as counsel just mentioned, there is no ambiguity. The policy is quite clear, and its intent is quite clear, and the defendant, Amplon, is trying to reform the policy. The American Home Policy has a $20,000 per person limit. In the Suessler case, there was a lengthy discussion of the policy limit on page – well, it's 147, second 584. On page 556, it discussed the terms of a $100,000 policy, and the Supreme Court stated under a $100,000 policy, the policyholder is assured of compensation for his injuries in the amount of $100,000. However, the policyholder is not necessarily assured of receiving the total $100,000 from the insurer, but only of receiving a portion of $100,000 which is not recovered from third parties. Section 143A.4, governing uninsured motorist coverage, provides that the insurance company is entitled to deduct the proportions – I'm sorry, the proceeds of any settlement or judgment against the tortfeasor from the payment it makes to the insurer. Skipping down in the quotations, if the insured policyholder receives workers' compensation benefits of $100,000, the insurance company's obligation would be zero. Defendant Amplon seeks an interpretation of the American Home Policy that would render the per-person limits meaningless, and seeks to have this Court reform the policy. The policy limits only assures the compensation up to that limit. As the American Home Policy states, the amount available for per-person bodily injury of $20,000 will not change the policy's total limit of liability. The policy's prohibition against paying for an element of loss for which the insured party has been compensated under workers' compensation reduces the amount available for payment under the policy limits. The Defendant Amplon wants this Court to, in effect, rewrite the policy to add a phrase that the elements of loss received under workers' compensation are not applicable to the policy limit. There is no basis for this Court to do so. The policy clearly states in paragraph number one of section D, quote, the most we will pay for all damages resulting from any one accident is the limits of insurance for uninsured motorists' insurance shown in the schedule for declarations, end quote. In this instance, that figure is $40,000 for each accident. But then this paragraph in the policy further states, the limit shown in the declaration is to have separate limits required by the Illinois Safety Responsibility Act to $20,000 per person. Paragraph two of the same provision states no one is entitled to receive duplicate payments for the same element of loss under this coverage. The provision we will not pay for any element of loss if a person is entitled to receive payment for that element of loss under workers' compensation means precisely what it states. There is not to be a double recovery from workers' compensation and this policy. It does not mean, nor is there any basis to so interpret, that the limits of the policy do not apply to those elements of the policy. I've been following this, but I didn't catch what case you're reading from. Oh, I'm sorry. Suessler versus Country Mutual. Okay. Defendant Atwant never explains what we are to do with those elements of loss he states can be set aside and ignored. The medical payments, the TTE. The policy states the most we will pay for all damages is $20,000 per person. Can the injured party just pick and choose what elements of loss he seeks? The policy requires all damages are limited to $20,000 per person. The damages for which he has already received compensation also apply to that limit. There is no policy provision to the contrary. There is no public policy to allow such a reformation of the policy, of the insurance policy. In a footnote in the reply brief, the defendant Atwant contended that the language in the provision regarding the most the policy will pay as a limit of coverage is the logical opposite of the policy excluding payment for an element of loss for which compensation has been paid. In other words, he's saying that they are in opposition to each other. Well, this is not correct. Both arguments, both concepts are limits of payment under the policy. One is a limit of the amount to be payable, and another is an exclusion of what amounts are to be considered. They are complementary. Counsel raises the argument that the language of the policy deals with elements of loss, and therefore we can pick and choose, as I mentioned earlier, which element of loss we want to bring to the arbitration panel. But what is ignored by his argument is his own use of the term element of loss. As I indicated earlier, if the policy is to pay for all damages, then those elements still exist. They still are part of the compensation his client has received and are, therefore, set off against that limit. There is no other way to read the policy. Otherwise, then the limit of $20,000 is increased. In this instance, where Mr. Tippie has received in excess of $20,000 so far in workers' compensation, then the policy, in effect, becomes a $40,000 policy. Or let's take an example where the person received less than the full policy amount of $20,000 and received, say, $10,000 in workers' compensation benefits. Is then the policy limit raised to $30,000, or is it still the $20,000 as we contend, and he is only entitled to the difference between what he's already received in workers' compensation and the remaining $10,000 balance? I think that's the correct interpretation. He's not saying he's got a $20,000 balance. He says it is set off by the medical and the wages. But what he wants us, then, to do is to hold an arbitration to award another sum within the $20,000 for pain and suffering. Well, then that, in effect, means that the policy is increased by whatever amount he receives in pain and suffering, but what would be available would be $20,000, so, in effect, $40,000 limit. And I think there is no reason, both in public policy and in terms of the insurance policy itself, to do that. Let me ask you this, then. Why did American Home Insurance put in the language about elements of loss? Why not just say that there would be a set-off for any monies received under workmen's compensation? Well, the only way I can address that is to say that the policy, read as a whole, is in the same provision. We're talking about the same Paragraph D describes, first, the limits of the policy, and then saying what it says to me is that you're not going to receive a double recovery. But why use the words elements of loss? Because I do believe that the policy was contemplating that there are provisions of payment under workers' compensation that are, I guess it would be there are elements of loss not compensated under workers' compensation. The example of the $10,000 individual I was referring to earlier, those elements of loss we're not going to pay for. You're not entitled to that $10,000 plus another $20,000. You're only entitled to $10,000 under our policy. And in this instance, though, because the $20,000 threshold has been reached, the issue is to contend, well, we can ignore those elements of loss and seek a different element of loss. But that would mean, then, that we have eliminated the insuring provision, which says we will pay for all damages available under this policy up to a limit of $20,000. Well, we can't then just ignore these other elements and set them aside and then seek to establish a new limit for the policy beyond the $20,000. So I think the sense was that this terminology would be sufficient to indicate that you're not getting a double recovery of benefits. And if you receive, let's say, medical payments of $5,000 and lost wages of $5,000, then you still are entitled to seek an additional $10,000 under this policy. But it doesn't mean that we can ignore the $10,000 increase that we're receiving under P20. That's a lot of explanation for something that's unambiguous. Well, I think there has been no question that is clear as to the language itself, as to the fact nobody has argued that it is an element that he can't seek. In fact, he's conceded to that. So then what does it become? It doesn't just disappear as he's contended. It is still a portion of his damages, and he's not entitled to a double recovery for it. Well, if he's not entitled to a double recovery for it, if he's then entitled to increase the limits concurrent with the amount paid, then in essence isn't he getting a double recovery? I think the terms are clear, definite, and specific. And I don't think there is an ambiguity, and counsel argued there wasn't an ambiguity. And I think the public policy issues are also then available for the consideration of interpreting the policy. Was there a double recovery in Gillen? No, because the court found that the terms were ambiguous. And that is that they didn't see that the provision of the pension fund was similar to a workers' compensation structure or similar law as workers' compensation. Well, this instance is we're talking about workers' compensation. There is no similarity. It is workers' compensation. We're saying that there's no amount available for amounts you've received in workers' compensation. But there concurrently is no basis to increase our limits as a result thereof. Thank you. Thank you, Mr. Rittenhouse. Mr. Crosby, do you have a rebuttal? Yeah, I do. I just wanted to first address what Justice Donovan asked. He asked about Gillen. Gillen didn't involve an ambiguity. It did not. The court said that the set-off policy was not expressed. Okay? Same thing here. Except in Gillen, there was actually a set-off policy. As Justice Chapman said, why couldn't you have just said, why don't we just set off everything that is paid in workers' compensation? You know, counsel suggests that SELSER is somehow similar. But if you look at the language of SELSER, I mean, SELSER, the language there was that they would reduce amounts paid in workers' compensation. That's not what they say here. That's not what they say here. They say that there's no significant difference between SELSER and the language here. SELSER read, the amounts payable for damages under underinsured motorist coverage will be reduced by the present value of all amounts payable under any workers' compensation disability or similar law. What's paid in workers' compensation is SELSER. Now, how are we – if I could just address this, because it is – it's smoke. We are not trying to raise the limits here. And I don't know if Justice Donovan, if you misspoke when you said that we are conceding that there is a set-off for medical and TTD. We are not. They are simply not covered here. If you look at the language, it says, we will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under workers' compensation. Okay. So this policy doesn't cover medical. It doesn't cover TTD. We concede that. But they say, oh, yes, it does. Yes, it does, because we cover all damages. No, they don't. You have to read their whole policy together. They say, uninsured doesn't cover anything workers' comp does. Fine. They don't have to pay it, so it can't increase their limits. If they don't have to pay it, then how is it increasing their limits? It's not. Is this clear and unambiguous? I'd say it's clear. It means what it says. It means if you get it in workers' compensation, it's not covered here. Fine. It's not even something they would ever have to pay. They say it is. Why? Because they say, we will pay for all damages. Okay, but they don't want to read their policy together. I mean, the very next paragraph says, we won't pay for any element that's covered by workers' compensation. In other words, whether you've got workers' compensation or not, if it's available to you, they don't pay for it. Fine. So they only cover losses, elements of loss that aren't covered by workers' compensation. So they're only looking at pain and suffering, loss of normal life. That's clear to me. In Gillen, the court said that the language, the set-off language, has to be such that it conveys to the average, ordinary, normal, reasonable person an intention to set off something from the policy. You ask them why, why not just say, we'll set off all amounts you receive from workers' compensation? We had that very long, convoluted, we have to look at this part of the policy. They're trying to reform the policy. They're trying to turn around the policy provisions and the amount of the policy. Is that something that's clear to the ordinary person? It wasn't clear to me. I didn't understand his answer. But what I'm saying is that Judge Ickes has to read the policy. We all have to read the policy. We don't get the public policy rationale if the policy, the express provisions of the policy don't lead us there. And as in Gillen, the set-off provision here doesn't exist. In Gillen, the set-off provision wasn't expressed. Therefore, it didn't apply. It wasn't a question of ambiguity. Thank you, Your Honor. Thank you, Mr. Crosby. Thank you, Mr. Rittenhouse. We'll take the matter under advisement. Render ruling.